Paul Kreher v. Commissioner.
Kreher v. Commissioner
Docket No. 19666.
United States Tax Court
1949 Tax Ct. Memo LEXIS 142; 8 T.C.M. (CCH) 630; T.C.M. (RIA) 49169; June 27, 1949
*142 Robert C. Handwerk, Esq., Southern Bldg., Washington, D.C., and Wilton H. Wallace, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In this proceeding, respondent determined deficiencies in income tax for the calendar years 1943 and 1945 in the respective amounts of $2,282.09 and $4,459.78, only part of each being contested. The contested portion of the deficiency for 1943 results from respondent's including in taxable income petitioner's receipt in that year of 125 shares of stock of the Tampa Shipbuilding Co., to which respondent assigned a value per share of $50, or an aggregate value of $6,250. Petitioner did not report the receipt of this stock in his 1943 return. The contested portion of the deficiency for 1945 results from respondent's determination that on the sale of this stock in 1945 at $100 per share, petitioner had long-term taxable gain in the amount of $3,125, and not a long-term capital loss as reported by petitioner in the amount of $6,250. Findings of Fact Petitioner, a resident of Tampa, Florida, filed his returns for the two years herein involved with the collector for the *143 district of Florida. For many years prior to November 7, 1940, he was the owner of 250 shares of stock of the Tampa Shipbuilding and Engineering Co., hereinafter sometimes referred to as the "old company." The basis of this stock in petitioner's hands was $100 per share. The old company was a Florida corporation, organized at about the time of the first world war, and operated a shipbuilding yard and machine shop. Petitioner's two brothers were its president and secretary. Sometime prior to 1940, it had secured and had outstanding loans from the Reconstruction Finance Corporation (R.F.C.), which were in default in 1940. Representatives of that agency, recognizing the difficulties then being experienced by the old company, which apparently affected its ability to perform under Government contracts let to it, demanded that its assets and liabilities be transferred to a new corporation, to be organized with new management in order that the construction of ships under the Government contracts might be completed. To this demand, petitioner and the other stockholders of the old company reluctantly acceded, as there was no alternative presented to them, and none which they could suggest. *144 Thereupon, on November 7, 1940, a new corporation was organized under the laws of Florida, named Tampa Shipbuilding Co., Inc. It had authorized capital of 10,000 shares of no par value capital stock, consisting of 3,400 shares of Class A non-voting stock, and 6,600 shares of Class B voting stock. Upon its organization, the new corporation took over all the assets of the old company and assumed its liabilities. As reflected in the agreement of sale entered into between the old company and the new one, liabilities aggregated $2,023,841.18 and assets at their book value were shown to be in the sum of $2,977,340.12. In this written agreement no mention was made of the stock of either the old or new company but an oral understanding was reached between the stockholders of the old company and the new management of the new company to the effect that the Class A stock of the new company would at some indefinite future time be distributed to the stockholders of the old company. This would be done when the new company had paid an obligation which was secured by the pledge of all the stock of the new corporation. At such future time, these stockholders were to receive for each two shares *145 of stock in the old company one share of Class A stock in the new company. It does not appear that the old company was ever dissolved. The fair market value of the Class A stock could not be accurately determined as of November 1940. The fair market value of such shares of stock in 1943 was less than the fair market value in 1940. None of the shares of the new company was distributed to the stockholders of the old company in 1940. All of the stock was issued to George B. Howell, a R.F.C. representative and president of the new company. He, in turn, hypothecated the stock with the R.F.C. because of the obligations running to it which had been assumed by the new company. In 1943, R.F.C. released the stock and Howell then caused to be transferred to petitioner 125 shares of Class A stock in exchange for 250 shares of the stock of the old company. That was the earliest time at which petitioner had any absolute and unconditional right to receive such shares. Petitioner did not report for tax purposes any gain or loss resulting from the receipt of this stock in 1943. Respondent determined that each share of such stock had value of $50, upon its receipt in 1943, and included the aggregate *146 amount of $6,250 in petitioner's income for that year. In 1945, upon the sale of 125 shares of stock for $12,500, petitioner imputed to them the basis of his 250 shares in the old company - $25,000 - and reported on his return a capital loss of $12,500, 50 per cent of which he claimed in the amount of $6,250. Respondent determined as to 1945 that the basis of the stock sold was $6,250; that there was a long-term capital gain of $6,250 upon the sale, 50 per cent of which was reportable, or $3,125. Opinion KERN, Judge: From a somewhat inadequate record in this proceeding, we discern the facts to be in substance that in 1940, when the new corporation was formed and took over the assets and liabilities of the old company, petitioner had a conditional right to exchange his 250 shares of stock of the old company, having a basis to him of $25,000, for 125 shares of non-voting stock in the new company at an indeterminate future time. The time when the exchange could ultimately be completed was dependent upon the release of the shares of the new company by those to whom they had been hypothecated. This ultimately occurred in 1943, and at that time petitioner received the shares of the *147 new company having a value, which is not contested, of $6,250. It was at that time that the gain or loss on the exchange could first be recognized. Although petitioner urges that a tax-free reorganization may have taken place in 1940, the record does not warrant that conclusion; and, moreover, from the facts presented, just the opposite appears to have eventuated as a result of the manner in which the various steps of the transaction were handled. It, therefore, must follow, contrary to petitioner's contention, that the basis of the stock of the old company would not carry over to the shares of the new company. Furthermore, so far as this petitioner is concerned, we believe that the crucial date for the ascertainment of gain or loss on the exchange was 1943 and not 1940. In 1940, the old stockholders had no absolute and unconditional right to the new shares and could not, of course, have demanded or obtained delivery in that year. In 1940, petitioner, at most, had some conditional rights under an executory agreement, which were incapable of valuation, and he received then nothing that could be considered as taxable gain. Cf. C. W. Titus, Inc., 33 B.T.A. 928. It *148 was in 1943 that petitioner for the first time received something of value - the new shares - and these he received in exchange for his old shares. At that time, because of his basis in the old shares and because the value of the new shares was less, he suffered a loss reportable for tax purposes. Respondent's determination that petitioner received income in that year to the full extent of the value of new shares received must be disapproved, because it fails to recognize the full scope of the transaction that then occurred which was in form and in effect an exchange of shares of stock of the old company for shares of stock of the new corporation. Respondent's determination, however, as to 1945, must stand. Petitioner has failed to introduce any evidence to dispute the correctness of respondent's determination of the value of the new shares when received by petitioner in 1943, and hence their basis. With the figure as to the basis of such shares established, there can be no difference of opinion, and there is none, as to the manner of reporting the sale of such new shares in 1945. Decision will be entered under Rule 50.